BEAUFORT COUNTY BOARD OF EDUCATION, Plaintiff v. BEAUFORT COUNTY BOARD OF COMMISSIONERS, Defendant

No. COA06-1419

(Filed 19 June 2007)

**1. Appeal and Error— appealability—mootness—capable of repetition yet evading review**

Although the pertinent gag order was lifted and the court proceedings were completed before this controversy could be fully resolved by the Court of Appeals, Media General's appeal from the gag order is not moot, because: (1) a reasonable likelihood remains that the trial court might attempt to repeat the conduct at issue in this case and subject Media General to the same or a similar action in another case; and (2) the trial court's failure to

rule upon Media General's motion, the short duration of the trial, and the elapsed time to obtain appellate review shows Media General's allegations are capable of repetition yet evading review.

**2. Constitutional Law— right to free speech—prior restraints—gag order—failure to enter findings on required standards**

The trial court erred by entering and then failing to dissolve a gag order prohibiting the parties and their attorneys from communicating with the media during civil litigation between two publically elected bodies disputing the adequacy of funding for the public school system, because: (1) the trial court neglected to enter findings of fact that either a clear threat existed to the fairness of the trial, that the threat was posed by the publicity to be restrained, or that it considered less restrictive alternatives as required by *Sherrill*, 130 N.C. App. 711 (1998); and (2) the gag order was not reduced to writing, signed by the judge, or filed with or entered by the Clerk of Superior Court.

**3. Constitutional Law— right to free speech—prior restraints—gag order—right of access to civil judicial proceeding or to judicial record in proceeding**

The trial court did not err by failing to rule upon Media General's motion under N.C.G.S. § 1-72.1 to dissolve a gag order that prohibited either party or their attorneys from talking to the press, because: (1) the statute applies to a person asserting a right of access to a civil judicial proceeding or to a judicial record in that proceeding, and Media General admits it was not denied a right of access to a civil judicial proceeding or to any judicial record in that proceeding; (2) the gag order prevented the parties and their attorneys from communicating with the press, not from attending the trial or gaining access to any proceeding or record in this matter; (3) Media General stipulated that it was free to attend and did attend the trial of this matter and freely accessed any public judicial records of this proceeding; and (4) under the facts and issues of this case, it was unnecessary to determine the outer ranges of what constitutes "access to a civil judicial proceeding."

Appeal by movant Media General Operations, Inc. from oral order rendered 19 July 2006 by Judge William C. Griffin, Jr., in Beaufort County Superior Court. Heard in the Court of Appeals 23 May 2007.

*Schwartz & Shaw, P.L.L.C., by Richard A. Schwartz, Brian C. Shaw, and Rachel B. Hitch, for plaintiff-appellee.*

*No brief filed for defendant-appellee.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Mark J. Prak, Charles E. Coble, and Elizabeth E. Spainhour; and The Bussian Law Firm, PLLC, by John A. Bussian, for movant-appellant.*

TYSON, Judge.

Media General Operations, Inc. ("Media General") appeals from an oral order prohibiting the parties and their attorneys from communicating with the media ("the gag order") during civil litigation between the Beaufort County Board of Education ("the School Board") and the Beaufort County Board of Commissioners ("the Commissioners"). We vacate the gag order.

## I. Background

Media General operates WNCT-TV, a television station engaged in gathering and broadcasting news. WNCT-TV is located in Greenville and its broadcast coverage area includes Beaufort County.

On 14 July 2006, the School Board filed a complaint in the Beaufort County Superior Court against the Commissioners. The complaint alleges the Commissioners deliberately underfunded the public school system in the Beaufort County budget ordinance for the fiscal year 2006-2007, and the revenues it appropriated to the school system were "based on the personal demands of various . . . Commissioners and in retaliation against the [School Board] for its refusal to capitulate to funding threats made by various individual . . . Commissioners and combinations of Commissioners acting in concert." The School Board demanded the trial court order the Commissioners to appropriate the amount of money needed to maintain the public school system from financial resources under the Commissioners control.

WNCT-TV sought to gather information and report news to the public regarding the funding dispute between the School Board and the Commissioners. Prior to trial, on 19 July 2006, the trial court orally rendered the gag order *ex mero motu*, which forbade the parties and their attorneys from communicating with members of the news media regarding the litigation. The following day, on 20 July 2006, Media General moved for the trial court to determine its right of

access to the courtroom proceedings, the parties, and their attorneys and sought dissolution of the gag order.

On Friday, 21 July 2006, after the jury selection was completed and motions *in limine* had been heard, the trial court heard arguments from Media General's counsel on its motion. Following the arguments, the trial court stated it would consider Media General's motion over the weekend. Opening statements and presentation of evidence began on the morning of 24 July 2006 and continued throughout the week. The trial court failed to rule on Media General's motion prior to proceeding with the trial.

On 26 July 2006, Media General filed with this Court a Petition for Writs of Mandamus and Prohibition and a Petition for Writ of Supersedeas and Motion for Temporary Stay. On 4 August 2006, Media General filed with this Court a Supplemented Petition for Writs of Mandamus and Prohibition and a Petition for Writ of Certiorari. By order dated 23 August 2006, this Court denied the Petition for Writs of Mandamus and Prohibition, dismissed as moot the Petition for Writ of Supersedeas, and dismissed the Petition for Writ of Certiorari.

On 27 July 2006, the trial court dissolved the gag order after the matter had been submitted to the jury and stated, "Let the record show that the Court now terminates any restrictions that may have been imposed on anybody about speaking to anybody." Media General appeals.

## II. Issues

Media General argues the trial court erred by: (1) entering and failing to dissolve the unconstitutional gag order; (2) denying its motion pursuant to N.C. Gen. Stat. § 1-72.1 and allowing the gag order to remain in place for the duration of the trial; and (3) violating the procedural requirements of N.C. Gen. Stat. § 1-72.1.

## III. Mootness

[1] The trial of this matter has concluded and Media General cannot obtain the relief it sought through the dissolution of the gag order. When the trial court dissolved the gag order after trial, it stated, "[t]hat makes [Media General's] suit moot." The threshold question is whether Media General's appeal is moot and should its appeal be dismissed.

Our Supreme Court has stated, "Whenever, during the course of litigation it develops . . . that the questions originally in controversy

between the parties are no longer at issue, the case should be dismissed, for courts will not entertain or proceed with a cause merely to determine abstract propositions of law." *In re Peoples*, 296 N.C. 109, 147, 250 S.E.2d 890, 912 (1978), *cert. denied*, 442 U.S. 929, 61 L. Ed. 2d 297 (1979) (citations omitted).

Our Courts have long recognized an exception to dismissals for mootness and have held it is proper for the appellate courts to hear appeals where the issues are "capable of repetition, yet evading review." *Boney Publishers, Inc. v. Burlington City Council*, 151 N.C. App. 651, 654, 566 S.E.2d 701, 703-04 (citing *Crumpler v. Thornburg*, 92 N.C. App. 719, 723, 375 S.E.2d 708, 711, *disc. rev. denied*, 324 N.C. 543, 380 S.E.2d 770 (1989)), *disc. rev. denied*, 356 N.C. 297, 571 S.E.2d 221 (2002); *see Spencer v. Kemna*, 523 U.S. 1, 17, 140 L. Ed. 2d 43, 56 (1998) (The capable-of-repetition exception to mootness applies where: "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." (quotation omitted)).

This Court adopted these factors and has stated:

There are two elements required for the exception to apply: (1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again.

*Boney Publishers, Inc.*, 151 N.C. App. at 654, 566 S.E.2d at 703-04.

In *Boney Publishers, Inc.*, the plaintiff, a newspaper publisher, alleged the Burlington City Counsel had violated the Open Meetings Law and Public Records Act, and sought declaratory and injunctive relief. 151 N.C. App. at 652, 566 S.E.2d at 702-03. We stated the appeal was "technically moot because the information sought by plaintiff ha[d] been fully disclosed." *Id.* at 654, 566 S.E.2d at 703. However, this Court applied an exception to dismissing the plaintiff's appeal as moot because: (1) all the requested information was disclosed in open session well before the controversy could be fully litigated and (2) there was a reasonable likelihood that the defendant, in considering the acquisition of other property for municipal purposes, could repeat the challenged conduct and subject the plaintiff to the same action and restrictions. *Id.* at 654, 566 S.E.2d at 704.

Here, as in *Boney Publishers, Inc.*, the gag order was lifted and the court proceedings completed before this controversy could be fully resolved. The trial court and this Court had not ruled upon Media General's motion and appeal prior to the completion of the trial. A reasonable likelihood remains that the trial court might attempt to repeat the conduct at issue in this case and subject Media General to the same or a similar action in another case. Due to the trial court's failure to rule upon Media General's motion, the short duration of the trial, and the elapsed time to obtain appellate review, Media General's allegations are "capable of repetition, yet evading review" and are properly before this Court. *Id.* at 651, 566 S.E.2d at 703-04.

### IV.  Constitutionality of the Gag Order

[2] Media General argues the trial court erred by entering and then failing to dissolve the unconstitutional gag order. We agree.

### A.  Standard of Review

"It is well settled that *de novo* review is ordinarily appropriate in cases where constitutional rights are implicated." *Piedmont Triad Reg'l Water Auth. v. Sumner Hills, Inc.*, 353 N.C. 343, 348, 543 S.E.2d 844, 848 (2001). We review this issue *de novo*.

### B.  Analysis

In *Branzburg v. Hayes*, the United States Supreme Court stated, "We do not question the significance of free speech, press, or assembly to the country's welfare. Nor is it suggested that news gathering does not qualify for First Amendment protection; without some protection for seeking out the news, freedom of the press could be eviscerated." 408 U.S. 665, 681, 33 L. Ed. 2d 626, 639 (1972).

Similarly, the United States Court of Appeals for the Fourth Circuit has held, "There are 'First Amendment interests in newsgathering.'" *Food Lion, Inc. v. Capital Cities/ABC Inc.*, 194 F.3d 505, 520 (4th Cir. 1999) (quoting *In re Shain*, 978 F.2d 850, 855 (4th Cir. 1992)).

The United States Court of Appeals for the Fifth Circuit has held:

The first amendment's broad shield for freedom of speech and of the press is not limited to the right to talk and to print. The value of these rights would be circumscribed [if] those who wish to disseminate information [were] denied access to it, for freedom to speak is of little value if there is nothing to say.

*In re Express-News Corp.*, 695 F.2d 807, 808 (5th Cir. 1982).

In *Sherrill v. Amerada Hess Corp.*, this Court discussed controlling precedents concerning gag orders and unanimously stated:

> "The issuance of gag orders prohibiting participants in judicial proceedings from speaking to the public or the press about those proceedings is a form of prior restraint." 1 Rodney A. Smolla, *Smolla and Nimmer on Freedom of Speech* § 15:41 (1996) [hereinafter 1 *Smolla and Nimmer*]. The phrase "prior restraint" refers to "judicial orders or administrative rules that operate to forbid expression before it takes place." *Id.* at § 15:1. "Prior restraints" are not unconstitutional *per se*, *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558, 43 L. Ed. 2d 448, 459 (1975), but are presumptively unconstitutional as violative of the First Amendment, *New York Times Co. v. United States*, 403 U.S. 713, 714, 29 L. Ed. 2d 822, 824-25 (1971); *State v. Williams*, 304 N.C. 394, 403, 284 S.E.2d 437, 444 (1981), *cert. denied*, 456 U.S. 832, 72 L. Ed. 2d 450 (1982); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 558, 49 L. Ed. 2d 683, 697 (1976), and are "repugnant to the basic values of an open society," 1 *Smolla and Nimmer* § 15:10.

130 N.C. App. 711, 719, 504 S.E.2d 802, 807 (1998).

As "prior restraints," gag orders are subject to strict and rigorous scrutiny under the First Amendment. *Id.* The party asserting validity of the order must establish: (1) "a clear threat to the fairness of the trial;" (2) "such threat is posed by the actual publicity to be restrained;" and (3) "no less restrictive alternatives are available" to rebut the presumptive unconstitutionality of gag orders. *Id.* at 719-20, 504 S.E.2d at 807-08. "Furthermore, the record must reflect findings [of fact] by the trial court that it has considered each of the above factors . . . and contain evidence to support [each] such finding[]." *Id.* at 720, 504 S.E.2d at 808 (citing *Nebraska Press Ass'n*, 427 U.S. at 563, 49 L. Ed. 2d at 700; *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-02, 68 L. Ed. 2d 693, 703-04 (1981)). The trial court's findings of fact must support its conclusions of law in order to enter a lawful order. *Blanton v. Blanton*, 40 N.C. App. 221, 225, 252 S.E.2d 530, 533 (1979). "Finally, [the gag order] must comply with the specificity requirements of the First Amendment." *Sherrill*, 130 N.C. App. at 720, 504 S.E.2d at 808 (citing *Nebraska Press Ass'n*, 427 U.S. at 568, 49 L. Ed. 2d at 703).

In *Sherrill*, the trial court entered a gag order that prohibited the parties to a civil proceeding and their attorneys from communicating with the public and the press about the case. 130 N.C. App. at 718, 504

S.E.2d at 806. In support of this directive, the trial court found as a fact, "[T]hat communications concerning the [a]ctions with media representatives and with other persons not parties to this action by the parties and their counsel . . . will be detrimental to the fair and impartial administration of justice in such [a]ctions." *Id.* at 718, 504 S.E.2d at 807. The plaintiffs argued the gag order constituted an unconstitutional prior restraint of their First Amendment right to free speech. *Id.* A unanimous panel of this Court reversed the gag order and held:

> Although the record reflects a finding that communications concerning the action by the parties to persons not involved in the suit would "be detrimental to the fair and impartial administration of justice," there is no evidence in the record to support this finding. Furthermore, the trial court made no findings reflecting the consideration of less restrictive alternatives.

*Id.* at 720, 504 S.E.2d at 808.

Here, the entirety of the trial court's consideration and rendering of the gag order is contained in the transcript:

> The Court: Let me see the lawyers back one moment. Let me see you and Mr. Schwartz again, please. I'm going to reconvene court momentarily.

> [Mr. Schwartz, Ms. Edwards, Mr. Yarborough, and Mr. Mayo are present in the courtroom; the prospective jury panel is not present in the courtroom.]

> The Court: Gag order.

> Mr. Schwartz: Yes, sir.

> The Court: No talking to the press. I believe we'll all be better off if nobody talks to the press.

> Mr. Yarborough: I assume that applies to not only myself and Mr. Mayo and Mr. Schwartz and Ms. Edwards but also to—

> The Court: To the parties. All parties. All press off-limits. We are going to try this case on the issue specified in the statute, That's all we're here for, and I think if I impose this requirement on everyone, we'll get along better in getting that done.

The *ex mero motu* gag order utterly failed to meet any of the required standards set forth in *Sherrill*. The trial court neglected to

enter findings of fact that either a "clear threat" existed to the "fairness of the trial" and that the threat was posed by the "publicity to be restrained," or that it considered "less restrictive alternatives." *Id.* at 719-20, 504 S.E.2d at 807-08. The gag order was not reduced to writing, signed by the judge, filed with or entered by the Clerk of Superior Court.

The issue in this civil proceeding is between two publically elected bodies disputing the adequacy of funding for the public school system—an issue of paramount public interest. *See Leandro v. State*, 346 N.C. 336, 353, 488 S.E.2d 249, 258 (1997) (N.C. Const. art. IX, § 2(1), imposes on government the duty to provide the children of every school district with access to a "sound basic education.").

Subsequent to the entry of the gag order, on 21 July 2006, the trial court heard arguments on Media General's motion to dissolve the gag order. Counsel specifically cited this Court's decision in *Sherrill* to the trial court. The trial court responded, *"Educate me. Who was on the panel of the Court of Appeals that ruled?"* (Emphasis supplied). Counsel responded that Judges Greene, Smith, and Timmons-Goodson comprised the panel in *Sherrill*. Counsel began to discuss N.C. Gen. Stat. § 1-72.1. The trial court asked, "How many trial judges participated in drafting the statute?" Counsel responded that he did not know. At the end of the arguments, the trial court informed counsel that he would consider the motion over the weekend, and stated:

> As always . . . I'm concerned that the parties that make the decisions that impact these processes have never tried a case, never been in a courtroom. Now, Judge Smith has, of course. But it's troublesome to me that a lot of decision-making goes on that's made by people who have never been there and done that.

Over 123 years ago, our Supreme Court set forth the relationship and duties between the appellate and trial court divisions of the General Court of Justice:

> Upon the plainest principle, the courts, whose judgments and decrees are reviewed by an appellate court of errors, must be bound by and observe the judgments, decrees and orders of the latter court, within its jurisdiction. Otherwise the court of errors would be nugatory and a sheer mockery. There would be no judicial subordination, no correction of errors of inferior judicial tribunals, and every court would be a law unto itself.

*Murrill v. Murrill*, 90 N.C. 120, 122 (1884).

Nothing is more basic to the jurisprudence of our State than:

"[w]here an appellate court decides questions and remands a case for further proceedings, *its decisions* on those questions *become the law of the case*, both in the subsequent proceedings in the trial court and upon a later appeal, *where* the same facts and *the same questions of law are involved.*"

*Sloan v. Miller Building Corp.*, 128 N.C. App. 37, 41, 493 S.E.2d 460, 463 (1997) (emphasis supplied).

To further "educate" the trial court, both Judge Greene and Judge (now Justice) Timmons-Goodson, in addition to Judge Smith, served long and distinguished terms of service as judges in the trial court division of the General Court of Justice prior to service on this Court. The trial court's inquiry of and remarks to counsel were irrelevant, repugnant, and reflect disdain for both the legislative and judicial processes. The trial court's duty, as is required by the solemn judicial oath, is to follow the laws, general statutes, and precedents of this Court, our Supreme Court, the Supreme Court of the United States, and the North Carolina and United States Constitutions. We admonish the trial judge for these remarks, as such conduct does nothing to promote the public's confidence in our courts at any level. N.C. Code of Judicial Conduct, Cannon 2A.

The trial court erred in entering the gag order in this matter. The gag order did not contain the required findings of fact and conclusions of law set forth in *Sherrill*. The gag order was not reduced to writing, signed by the judge, filed, or entered in the Office of the Clerk of Superior Court as is required.

### V. N.C. Gen. Stat. § 1-72.1

[3] In addition to asserting its motion under our State and Federal Constitutions, Media General also asserted its motion under N.C. Gen. Stat. § 1-72.1. Media General argues the trial court erred by not ruling upon its motion pursuant to N.C. Gen. Stat. § 1-72.1 by leaving in place the unconstitutional gag order and by violating the procedural requirements set forth in the statute.

N.C. Gen. Stat. § 1-72.1(a) (2005), entitled, "Procedure to assert right of access," states in part, "Any person asserting a right of access to a civil judicial proceeding or to a judicial record in that proceeding may file a motion in the proceeding for the limited purpose of determining the person's right of access." The statute further provides that

upon receipt of the motion, "the court *shall* establish the date and location of the hearing on the motion *that shall be set at a time before conducting any further proceedings relative to the matter for which access is sought under the motion.*" N.C. Gen. Stat. § 1-72.1(b) (emphasis supplied). This statute further states:

> *The court shall rule* on the motion after consideration of such facts, legal authority, and argument as the movant and any other party to the action desire to present. *The court shall issue a written ruling* on the motion that *shall contain* a statement of reasons for the ruling sufficiently specific to permit appellate review. The order may also specify any conditions or limitations on the movant's right of access that the court determines to be warranted under the facts and applicable law.

N.C. Gen. Stat. § 1-72.1(c) (emphasis supplied).

" 'Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give [the statute] its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein.' " *State v. Camp*, 286 N.C. 148, 152, 209 S.E.2d 754, 756 (1974) (quoting 7 Strong, N.C. Index 2d, Statutes § 5 (1968)). Here, the statute plainly and unambiguously applies to "[a]ny person asserting a right of access to a civil judicial proceeding or to a judicial record[.]" N.C. Gen. Stat. § 1-72.1(a). Media General admits it was not denied "a right of access to a civil judicial proceeding" or to any "judicial record in that proceeding." *Id.*

The gag order prevented the parties and their attorneys from communicating with the press, not from attending the trial or gaining access to any proceeding or record in this matter. Media General argues that the words, "right of access to a civil judicial proceeding," should be broadly construed and encompass any and every aspect of a "civil judicial proceeding." *Id.*

Media General stipulates that it was free to attend and did attend the trial of this matter and freely accessed any public judicial records of this proceeding. Under the facts and issues before us, it is unnecessary to determine the outer ranges of what constitutes "access to a civil judicial proceeding." *Id.*

## VI.  Conclusion

No current relief is available to Media General because the trial proceeding in which the gag order arose is completed. This appeal is

technically moot. However, we find the issues regarding the trial court's failure to timely rule upon the gag order and the propriety of the gag order as rendered to be "capable of repetition, yet evading review." *Boney Publishers, Inc.*, 151 N.C. App. at 654, 566 S.E.2d at 703-04.

The gag order wholly failed to meet any of the standards set forth in *Sherrill*, 130 N.C. App. at 719-20, 504 S.E.2d at 807-08, or N.C. Gen. Stat. § 1-72.1. The trial court failed to enter any findings of fact of the existence of "a clear threat to the fairness of the trial," that "such threat is posed by the actual publicity to be restrained," and that it considered "less restrictive alternatives." *Sherrill*, 130 N.C. App. at 719-20, 504 S.E.2d at 807-08. The trial court erred in orally rendering the gag order and in not entering a written order containing the required findings and conclusions on Media General's motion prior to proceeding with the trial.

The gag order at issue prohibits either party or their attorneys from "talking to the press." The gag order did not restrict Media General's "access to a civil judicial proceeding" or "judicial record in that proceeding." N.C. Gen. Stat. § 1-72.1(a). Media General attended the trial and freely accessed records of this proceeding. The statute plainly and unambiguously applies to a "person asserting a right of access to a civil judicial proceeding or to a judicial record in that proceeding." *Id.* The gag order is vacated.

Vacated.

Judges ELMORE and GEER concur.