STROUD, Judge.
 

 Appellant DB North Carolina Holdings, Inc. d/b/a/ The Fayetteville Observer ("Newspaper") appeals from the trial court's orders permanently sealing the entire court file and denying its motion for access. Newspaper contends that the trial court's orders sealing this file were unconstitutional under the First Amendment to the United States Constitution and Article I, Section 18 of the North Carolina Constitution because they did not apply available alternatives to sealing the entire file and this measure was not narrowly tailored. We agree that the orders sealing an entire court file, even including the date of filing and names of counsel, guardians
 
 ad
 

 *586
 

 litem
 
 and the trial court, are overbroad. The public, including Newspaper, has a presumptive right of access to court files under the North Carolina and United States Constitutions as well as North Carolina's Public Records Act. The trial court was correct in concluding there is a compelling public interest in protecting juvenile plaintiffs, who were victims of sexual abuse, but this interest cannot justify sealing the entire file permanently; the documents in the file can be redacted to protect the identities of the juveniles. We vacate the trial court's sealing orders, reverse the trial court's order denying Newspaper's motion for access, and remand for the trial court to hold a hearing to consider the proper extent of redaction and sealing as discussed below and to enter an new order opening the file with these limited redactions.
 

 I. Background
 

 The court file sealed by the trial court involves a lawsuit based upon "allegations of sexual abuse committed against minors" by one of the defendants. On 22 November 2016, the same day the complaint was filed, the trial court entered a Temporary Order to Seal the court file entirely.
 
 [1]
 
 On 14 December 2016, the trial court approved a settlement of the minor plaintiffs' claims and entered an Order to Seal which permanently sealed the file, and the case was voluntarily dismissed. On 3 July 2017, Newspaper filed a motion to intervene and for access to court records under
 
 N.C. Gen. Stat. § 1-72.1
 
 , "for the limited purpose of seeking to have [the trial court] enter an order unsealing the court file in this case and granting [Newspaper] and the public access to this file." Because the underlying file is sealed in its entirety, our background is brief and predominantly based on the undisputed "facts" as set out in Newspaper's motion.
 
 [2]
 
 Newspaper's motion stated:
 

 [Newspaper] is informed and believes that this case involves civil claims for negligence and has been sealed in its entirety, apparently from its inception in November, 2016. [Newspaper] has sought access to this file through requests to the Cumberland County Clerk of Court and has been informed that the entire case file is sealed by order of a Superior Court Judge.
 

 At the current time, there are no documents in this file which are available for public review....
 

 There is no motion for public review in the file seeking the sealing of the file, no order in the public file directing that the entire file, or any portion thereof, be sealed from public view, and no findings of fact or law available for public review suggesting the basis for initially sealing the file or for keeping it sealed. The public file does not reflect whether the file was sealed at the request of the plaintiff or of the defendant, with the consent of all parties, over the objection of a party, or
 
 sua sponte
 
 . The file does not reflect the names of counsel for plaintiff or defendant.
 

 Movant understands that this sealed civil action likely involves civil claims that relate to, or parallel, charges asserted in a criminal action currently pending in the state trial courts of South Carolina. That criminal case has been the subject of substantial public interest and attention over the past nine months. At the outset of that criminal case, the South Carolina trial court entered an order on September 19, 2016 (file-stamped October 6, 2016) prohibiting various trial participants, including the alleged victims and their family members, from making any extrajudicial statements about the case. That order, which also effectively sealed the contents of the court file, was dissolved by a June 5, 2017 order upon the motion of
 
 The Fayetteville Observer
 
 . The court files in the South Carolina criminal case are now open for public inspection.
 

 For the reasons set forth below, [Newspaper], pursuant to the First Amendment to the United States Constitution, the North Carolina Constitution, Article I, § 18, and N.C.G.S. § 7A-109, seeks access to the above-described court records maintained by the Cumberland County Clerk of Court. [Newspaper] respectfully asks this
 
 *587
 
 Court to unseal this court file and to direct the Clerk of Court to promptly make them available to [Newspaper] and to the public.
 

 On 2 August 2017, the trial court entered an order denying Newspaper's motion. Newspaper filed notice of appeal to this Court from the trial court's December 2016 order sealing the file, any prior sealing orders, and from the order denying its motion for access.
 

 II. Motion to Dismiss
 

 Defendants filed a motion to partially dismiss Newspaper's appeal,
 
 [3]
 
 arguing:
 

 The Court of Appeals should both deny [Newspaper]'s current motion,
 
 in toto
 
 , and dismiss all of [Newspaper]'s appeal except as to its statutory motion for access, in that (1) [Newspaper] was not a specifically aggrieved party concerning these matters, and, therefore, did not have standing to appeal the same; (2) even if [Newspaper] had such standing, which is denied, [Newspaper]'s notice of appeal is untimely and, therefore, this Court is without jurisdiction to address the same and (3) the Order Denying Access is quite detailed and specific and it is both unnecessary and in contravention of the Trial Court's
 
 Virmani
 
 analysis to grant [Newspaper]'s attorneys even limited access.
 

 Newspaper filed its response to defendants' motion on 8 February 2018, and this Court referred the motion to the panel assigned to hear this appeal.
 

 a. Standing
 

 Defendants note that Newspaper did not seek to intervene but only sought access to the court file under
 
 N.C. Gen. Stat. § 1-72.1
 
 . Defendants argue that Newspaper has only a "general interest" in the case, the same as any member of the general public may have, but is not a "specifically aggrieved" party with standing to appeal the order sealing the file. Defendants compare this case to
 
 In re Duke Energy Corp.
 
 ,
 
 234 N.C. App. 20
 
 ,
 
 760 S.E.2d 740
 
 (2014), where "NC WARN, the self-proclaimed public watchdog group, sought to intervene in [an] investigative proceeding and 'assist' the Utilities Commission in keeping this alleged impropriety from increasing the energy costs for all North Carolina ratepayers." Defendants concede this case is "not directly on point" but argue it is instructive. But
 
 In re Duke Energy Corp.
 
 is simply not applicable in this context. First, it addressed a motion to intervene. Newspaper concedes that it was not seeking to intervene and the trial court did not address intervention. In addition, this Court discussed NC WARN's status as an "aggrieved party" under
 
 N.C. Gen. Stat. § 62-90
 
 , which addresses the right of appeal from a ruling by the North Carolina Utilities Commission.
 

 Id.
 

 at 36
 
 ,
 
 760 S.E.2d at 750
 
 . Here, Newspaper's claim to access was filed under
 
 N.C. Gen. Stat. § 1-72.1
 
 , a statute which sets forth the procedure for obtaining access to a sealed court file.
 

 In
 
 Virmani v. Presbyterian Health Services Corp.
 
 ,
 
 350 N.C. 449
 
 ,
 
 515 S.E.2d 675
 
 (1999), the plaintiff physician sued a hospital regarding its suspension of his medical staff privileges. The Charlotte Observer filed a motion to intervene in the case and sought access to sealed medical peer review committee records.
 
 Id.
 
 at 457,
 
 515 S.E.2d at 682
 
 . Regarding the claim for intervention, the North Carolina Supreme Court concluded that The Charlotte Observer's interest in the civil case was "only indirect or contingent" and therefore not subject to intervention as a matter of right under N.C. R. Civ. P. 24(a) and that the trial court had not erred in denying permissive intervention under Rule 24.
 
 Id.
 
 at 460,
 
 515 S.E.2d at 683
 
 . The Supreme Court concluded that "the
 
 Observer
 
 had alternative means of obtaining a full and timely review of the issue it sought to raise without being allowed to intervene as a party and unduly delay the adjudication of the rights of the original parties."
 
 Id
 
 . at 462,
 
 515 S.E.2d at 684
 
 .
 

 Soon after
 
 Virmani
 

 ,
 
 in 2002, our General Assembly enacted
 
 N.C. Gen. Stat. § 1-72.1
 
 which "establish[ed] a civil procedure for hearing and determining claims of access to documents and to testimony in civil judicial proceedings and shall not be deemed or construed
 
 *588
 
 to limit, expand, change or otherwise preempt any provisions of the substantive law that define or declare the rights and restrictions with respect to claims of access."
 
 N.C. Gen. Stat. § 1-72.1
 
 (f) (2017). The statute does not require a person or entity seeking access to a court file or judicial proceeding to be a party to the case or to have any particularized interest in the case.
 
 N.C. Gen. Stat. § 1-72.1
 
 (a). It provides that "
 
 [a]ny person asserting a right of access
 
 to a civil judicial proceeding or to a judicial record" may file a motion and that "[t]he motion shall not constitute a request to intervene under the provisions of Rule 24 of the Rules of Civil Procedure and shall instead be governed by the procedure set forth in this statute."
 

 Id.
 

 (emphasis added).
 

 Newspaper was not required to intervene in the case to seek relief under N.C. Gen. Stat. 1-72.1 and has standing to appeal the trial court's orders sealing the case file.
 
 Beaufort Cty. Bd. of Educ. v. Beaufort Cty. Bd. of Comm'rs
 
 ,
 
 184 N.C. App. 110
 
 , 120,
 
 645 S.E.2d 857
 
 , 863 (2007) ("[
 
 N.C. Gen. Stat. § 1-72.1
 
 ] plainly and unambiguously applies to any person asserting a right of access to a civil judicial proceeding or to a judicial record." (brackets and quotation marks omitted) ). Defendants' motion to dismiss based on standing is denied.
 

 b. Timeliness of Appeal
 

 Defendants argue this Court has no jurisdiction to consider this appeal because Newspaper did not file its Notice of Appeal of the 14 December 2016 Order and the "prior orders sealing the matter" until 10 August 2017. Since the notice of appeal was not filed within 30 days of the entry of the sealing orders, defendants claim it was untimely. Newspaper responds that it is impossible to appeal from an order in a sealed file since it had no actual or constructive notice of the order until 2 August 2017; notice of appeal was filed eight days later. Newspaper points out that that "[t]hese orders were maintained in a sealed fashion in an anonymous case file, with no record notice to the public of their existence." Newspaper also notes that "[t]he sealing of the file in its entirety, keeping secret the names of all parties and even the names of their counsel of record in the civil action, made it exceedingly difficult for [Newspaper] to even comply with the requirement of N.C.G.S. § 1-72.1(a) that any motion for access to a civil judicial proceeding shall be served upon 'all parties to the proceeding' in accordance with Rule 5 of the N.C. Rules of Civil Procedure."
 

 Newspaper filed its motion for access on 3 July 2017. The trial court heard the motion on 2 August 2017 and entered an order denying Newspaper's motion on the same day. Only then did Newspaper learn that the trial court's final order sealing the file had been entered on 14 December 2016, and the trial court's 2 August 2017 order incorporated by reference and relied in part upon both the Temporary Order to Seal entered on 22 November 2016 and the final Order to Seal entered on 14 December 2016-although those orders remained sealed. The trial court specifically provided, "The findings of fact and conclusions of law contained in its previously entered
 
 orders
 
 to seal are adopted and incorporated by reference." (Emphasis added.) The trial court also determined that "[t]he public policies found herein, as well as those incorporated by reference, substantially outweigh the public's right of access to the file in this matter."
 

 Generally, non-parties have no right of appeal from an order.
 
 See
 

 Bailey v. State
 
 ,
 
 353 N.C. 142
 
 , 156,
 
 540 S.E.2d 313
 
 , 322 (2000) ("A careful reading of Rule 3 reveals that its various subsections afford no avenue of appeal to either entities or persons who are nonparties to a civil action."). But N.C. Gen. Stat § 1-72.1 establishes a procedure which allows non-parties to request access to court files and specifically grants a right of appeal to the non-party petitioning for access:
 

 The court shall rule on the motion after consideration of such facts, legal authority, and argument as the movant and any other party to the action desire to present.
 
 The court shall issue a written ruling on the motion that shall contain a statement of reasons for the ruling sufficiently specific to permit appellate review.
 
 The order may also specify any conditions or limitations on the movant's right of access that the
 
 *589
 
 court determines to be warranted under the facts and applicable law.
 

 N.C. Gen. Stat. § 1-72.1
 
 (c) (emphasis added).
 

 Here, Newspaper timely filed notice of appeal from the 2 August 2017 order but did not, and could not have, filed timely notice of appeal from the 14 December 2016 Order to Seal or the 22 November 2016 Temporary Order to Seal, since both orders were in the sealed file. Newspaper has therefore requested that we issue a writ of certiorari under NC Rule of Appellate Procedure 21(a) to allow review of the 14 December 2016 order and any "prior orders sealing this matter."
 

 The writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action, or when no right of appeal from an interlocutory order exists, or for review pursuant to N.C.G.S. § 15A-1422(c)(3) of an order of the trial court ruling on a motion for appropriate relief.
 

 N.C. R. App. P. 21(a)(1).
 

 Newspaper had a right of appeal under
 
 N.C. Gen. Stat. § 1-72.1
 
 and lost that right by failing to timely appeal the December 2016 Order to Seal and the November 2016 Temporary Order to Seal. But under these unusual circumstances, Newspaper could not possibly have timely filed a notice of appeal from orders in a sealed file-which Newspaper's counsel still have not seen-any sooner than it did, and Newspaper acted in good faith. If we were not to grant review by certiorari as to the 22 November 2016 and 14 December 2016 orders, we would render the sealed orders unreviewable, but
 
 N.C. Gen. Stat. § 1-72.1
 
 contemplates appellate review of this type of order. Indeed, it is crucial that appellate review be available for a
 
 sealed
 
 court order. "Without access to judicial opinions, public oversight of the courts, including the processes and the outcomes they produce, would be impossible."
 
 Doe v. Pub. Citizen
 
 ,
 
 749 F.3d 246
 
 , 267 (4th Cir.2014). In our discretion, we therefore allow defendants' motion in part and dismiss Newspaper's appeal from the trial court's orders entered 14 December 2016 and 22 November 2016, but we also allow Newspaper's motion for certiorari to review both orders.
 
 See
 

 Anderson v. Hollifield
 
 ,
 
 345 N.C. 480
 
 , 482,
 
 480 S.E.2d 661
 
 , 663 (1997) (" Rule 21(a)(1) gives an appellate court the authority to review the merits of an appeal by certiorari even if the party has failed to file notice of appeal in a timely manner.").
 

 III. Right of Access to Court File
 

 On appeal, Newspaper argues that the orders sealing the entire file in this civil action are unconstitutional because "(1) they do not apply available alternatives to sealing the entire file, and (2) they are not narrowly tailored to accomplish their stated purpose." (Original in all caps.)
 
 N.C. Gen. Stat. § 1-72.1
 
 governs the procedure of this case, but "shall not be deemed or constructed to limit, expand, change or otherwise preempt any provisions of the substantive law that define or declare the rights and restrictions with respect to claims of access."
 
 N.C. Gen. Stat. § 1-72.1
 
 (f)
 

 a. Standard of Review
 

 Newspaper argues that our standard of review is
 
 de novo
 
 as its claim is based on constitutional rights. Defendants contend we must review the trial court's order for an abuse of discretion. Newspaper has asserted a claim under the procedural statute
 
 N.C. Gen. Stat. § 1-72.1
 
 , and the substantive bases for the claim are the North Carolina Constitution, the United States Constitution, and N.C. Gen. Stat. § 7A-109. "The distinction between the rights afforded by the first amendment and those afforded by the common law is significant. A first amendment right of access can be denied only by proof of a compelling governmental interest and proof that the denial is narrowly tailored to serve that interest."
 
 Baltimore Sun Co. v. Goetz
 
 ,
 
 886 F.2d 60
 
 , 64 (4th Cir.1989) (citations and quotation marks omitted).
 
 [4]
 
 "In contrast, under
 
 *590
 
 the common law the decision to grant or deny access is left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case."
 

 Id.
 

 (citations and quotation marks omitted).
 
 [5]
 

 In
 
 In re Search Warrants of Cooper
 
 ,
 
 200 N.C. App. 180
 
 ,
 
 683 S.E.2d 418
 
 (2009), this Court applied different standards of review based upon each substantive basis for the plaintiffs' claim requesting unsealing of search warrants in a murder investigation. The court first analyzed the plaintiffs' claim to access to sealed records under the Public Records Act for abuse of discretion.
 
 Id.
 
 at 186,
 
 683 S.E.2d at 423
 
 . "Access to public records in North Carolina is governed generally by our Public Records Act, codified as Chapter 132 of the North Carolina General Statutes. Chapter 132 provides for liberal access to public records."
 

 Id.
 

 "The Public Records Act permits public access to all public records in an agency's possession
 
 unless
 
 either the agency or the record is specifically exempted from the statute's mandate."
 
 Id
 
 . (citation and quotation marks omitted). But this Court applied
 
 de novo
 
 review to the plaintiffs' claims under the North Carolina and United States Constitutions, although the opinion does not expressly identify the standard of review.
 
 See
 

 id.
 
 at 188-91,
 
 683 S.E.2d at 425-26
 
 .
 

 The only case which has addressed a claim under
 
 N.C. Gen. Stat. § 1-72.1
 
 since its enactment by the General Assembly in 2002 is
 
 Beaufort County Board of Education v. Beaufort County Board of Commissioners
 
 ,
 
 184 N.C. App. 110
 
 , 115,
 
 645 S.E.2d 857
 
 , 860 (2007). Although the procedural posture of that case was different, the court based its standard of review upon the constitutional claim asserted:
 

 It is well settled that de novo review is ordinarily appropriate in cases where constitutional rights are implicated. We review this issue
 
 de novo
 
 .
 

 Id.
 
 at 115,
 
 645 S.E.2d at 860
 
 (citation and quotation marks omitted). Because Newspaper's right to access to court records is based upon the United States and North Carolina Constitutions, Newspaper presented this argument to the trial court, and the trial court's orders also addressed the constitutional rights of access, we review the trial court's orders
 
 de novo
 
 .
 
 [6]
 
 "The word
 
 de novo
 
 means fresh or anew; for a second time, and an appeal
 
 de novo
 
 is an appeal in which the appellate court uses the trial court's record but reviews the evidence and law without deference to the trial court's rulings."
 
 Parker v. Glosson
 
 ,
 
 182 N.C. App. 229
 
 , 231,
 
 641 S.E.2d 735
 
 , 737 (2007) (citations and quotation marks omitted).
 

 b. Qualified Right of Access to Civil Court Records under Article I, Section 18
 

 We have been unable to find any other case in North Carolina in which the entire court file, including the court orders sealing the file, has been sealed. This level of protection from public access is unprecedented in North Carolina and has occurred in only very few cases throughout the United States. Even in cases dealing with highly sensitive matters such as national security, only specific portions of files are sealed or documents are redacted as needed, instead of sealing the entire file.
 

 Litigation about trade secrets regularly is conducted in public; the district court seals only the
 
 secrets
 
 (and writes an opinion omitting secret details); no one would dream of saying that every dispute about trade secrets must be litigated in private. Even disputes about claims of national security are litigated in the open. Briefs in the
 
 Pentagon Papers
 
 case,
 
 New York Times Co. v. United States
 
 ,
 
 403 U.S. 713
 
 ,
 
 91 S.Ct. 2140
 
 ,
 
 29 L.Ed.2d 822
 
 (1971), and the hydrogen bomb plans case,
 
 United States v. Progressive, Inc.
 
 ,
 
 467 F.Supp. 990
 
 , rehearing denied,
 
 *591
 

 486 F.Supp. 5
 
 (W.D.Wis.), appeal dismissed,
 
 610 F.2d 819
 
 (7th Cir.1979), were available to the press, although sealed appendices discussed in detail the documents for which protection was sought.
 

 Union Oil Co. of California v. Leavell
 
 ,
 
 220 F.3d 562
 
 , 567 (7th Cir.2000).
 

 North Carolina's Supreme Court set forth the qualified right of access to court files and proceedings under the North Carolina Constitution in
 
 Virmani,
 

 350 N.C. 449
 
 ,
 
 515 S.E.2d 675
 
 . The trial court entered an order sealing various documents in the file and closing the courtroom proceedings, based upon N.C. Gen. Stat. § 131E-95, which protects the confidentiality of "proceedings of a medical review committee, the records and materials it produces and the materials it considers[.]"
 
 Id.
 
 at 463,
 
 515 S.E.2d at 685
 
 (quoting N.C. Gen. Stat. § 131E-95(b) (1997) ). The Charlotte Observer filed a motion for access to the documents and to open the courtroom proceedings; the trial court denied the motion and the Observer appealed.
 
 Id.
 
 at 456,
 
 515 S.E.2d at 681
 
 .
 

 The North Carolina Supreme Court first determined that the Observer had no "North Carolina common law right of public access" to the information or proceedings because that right was supplanted by the statute specifically governing medical review committee records and proceedings, N.C. Gen. Stat. § 131E-95.
 
 Id.
 
 at 473,
 
 515 S.E.2d at 692
 
 . The Court then addressed the Observer's claim under the North Carolina Constitution and held that the public has a qualified right of access to court proceedings under Article I, Section 18 of the North Carolina Constitution :
 

 We now hold that the open courts provision of Article I, Section 18 of the North Carolina Constitution guarantees a
 
 qualified
 
 constitutional right on the part of the public to attend civil court proceedings....
 

 The qualified public right of access to civil court proceedings guaranteed by Article I, Section 18 is not absolute and is subject to reasonable limitations imposed in the interest of the fair administration of justice or for other compelling public purposes. Thus, although the public has a qualified right of access to civil court proceedings and records, the trial court may limit this right when there is a compelling countervailing public interest and closure of the court proceedings or sealing of documents is required to protect such countervailing public interest. In performing this analysis, the trial court must consider alternatives to closure. Unless such an overriding interest exists, the civil court proceedings and records will be open to the public. Where the trial court closes proceedings or seals records and documents, it must make findings of fact which are specific enough to allow appellate review to
 
 *592
 
 determine whether the proceedings or records were required to be open to the public by virtue of the constitutional presumption of access.
 

 Id.
 
 at 476-77,
 
 515 S.E.2d at 693
 
 (citations omitted).
 

 The Supreme Court affirmed the trial court's order in
 
 Virmani
 
 , which had sealed only the confidential portions of the records as provided by N.C. Gen. Stat. § 131E-95 and noted that in the factual situation of
 
 Virmani
 
 , the General Assembly had "determined that this right of access is outweighed by the compelling countervailing governmental interest in protecting the confidentiality of the medical peer review process."
 
 Id.
 
 at 477,
 
 515 S.E.2d at 693
 
 ("The General Assembly has recognized the public's compelling interest in such confidentiality by enacting N.C.G.S. § 131E-95 and making the confidentiality of medical peer review investigations part of our state's public policy.").
 

 Therefore, under
 
 Virmani
 
 , Newspaper has a qualified right of access to the court file, as the trial court's orders recognized, but this right may be limited "when there is a compelling countervailing public interest and closure of the court proceedings or sealing of documents is required to protect such countervailing public interest."
 
 Id.
 
 at 476,
 
 515 S.E.2d at 693
 
 . But the trial court is required to "consider alternatives to closure. Unless such an overriding interest exists, the civil court proceedings and records will be open to the public."
 

 Id.
 

 The trial court is also required to "make findings of fact which are specific enough to allow appellate review to determine whether the proceedings or records were required to be open to the public by virtue of the constitutional presumption of access."
 
 Id.
 
 at 476-77,
 
 515 S.E.2d at 693
 
 .
 

 IV. Sealing Orders
 

 a. Procedural Background
 

 The trial court's sealing orders were entered based upon motions from both plaintiffs and defendants. Since the entire file and even the sealing order we are reviewing were sealed, we first note we cannot analyze the trial court's orders on appeal and explain the legal basis for our ruling without some references to dates, motions filed, and the legal bases alleged by the parties for sealing the file, and these are details from the sealed file. We also cannot analyze the legal conclusions of the orders sealing the file-which were also sealed-without stating what those conclusions are. Since we conclude that the orders sealing the file must be reversed and the matter remanded for further action, we will include the procedural facts and dates as necessary and the conclusions of law and legal rationale as stated by the trial court's order, but we will not include any factual allegations from the complaint not already revealed in the Newspaper's motion or the trial court's 2 August 2017 order.
 

 The initial complaint was filed by one of the minor plaintiffs on 22 November 2016. At the same time, plaintiff filed a motion for a temporary restraining order, a motion for expedited discovery, and a motion for an order sealing the file. Plaintiff requested that all filings and documents be under seal or maintained as confidential pending clarification by the court in South Carolina of the intended scope of its order prohibiting extrajudicial statements and release of documents ("South Carolina gag order").
 
 [7]
 

 On the same day, the trial court entered a Temporary Order to Seal sealing the file and set an additional hearing to take place no later than 14 December 2016. Defendants also filed a Motion to Seal, and their motion was based upon the South Carolina gag order and the need to protect the identities of the minor plaintiffs but also stated the additional concerns of protecting defendants whose conduct was "merely passive" and preventing injury to the reputations of various persons and entities. The trial court held another hearing on the motions to seal on 14 December 2016 and entered the Order to Seal. Also on 14 December 2016, the trial court heard the plaintiffs' Motion for Approval of Settlement for the Benefit of Minors and Dismissal and entered an order approving the settlement.
 

 b. 2016 Sealing Orders
 

 In both the 22 November and 14 December 2016 sealing orders, the trial court noted there is a qualified public right of access to civil court proceedings guaranteed by Article I, Section 18 of the North Carolina Constitution, but the trial court noted this right is not absolute and is subject to reasonable limitations in the interest of the fair administration of justice or for other compelling public purposes. The trial court then made findings of fact regarding the complaint, noting that the claims involved sexual abuse of minors and there is a strong and compelling public interest in protecting the identity of the minor plaintiffs. Besides protection of the identity of the minor plaintiffs, the trial court noted the pending criminal prosecution in South Carolina. The trial court found that one of the defendants here, also the defendant in the criminal prosecution in South Carolina, ("criminal defendant") has a right to a fair trial by an impartial jury, free from the influence of prejudicial pre-trial publicity, under the North and South Carolina Constitutions and the United States Constitution. The trial court found there is a strong and compelling countervailing public interest which outweighs the public's interest in access to the court file based upon the defendant's right to a fair trial, due to the proximity of Cumberland County to the South Carolina
 
 *593
 
 county in which the criminal prosecution was pending and the shared public policy of both states to provide a fair trial. The court noted that it had considered alternatives to sealing the court files and found no suitable alternative to sealing the entire proceedings and court file. The orders decreed that the entire court file, including any future filings, be immediately sealed and kept confidential and that any court proceedings including hearings, depositions, recordings, or transcripts shall be "extremely confidential" and kept under seal. The orders directed that the case be cataloged with pseudonyms for all parties and that the docket entries protect the identities of the parties pending "additional guidance" from the trial court.
 
 [8]
 

 We note that the trial court's November 2016 and December 2016 orders did
 
 not
 
 make any finding or conclusion based upon the defendants' alleged interest in protecting the defendants whose conduct was "merely passive" or preventing injury to the reputations of various other persons and entities. The trial court relied
 
 only
 
 upon (1) the public interest in protecting the identity of minor victims of sexual abuse, and (2) the public interest that the criminal defendant receive a fair trial free from unduly prejudicial pre-trial publicity.
 

 V. Analysis
 

 a. August 2017 Order denying Motion for Access
 

 The trial court's order denying Newspaper's motion for "access to civil judicial proceedings and records previously placed under seal" made basic procedural findings and then, based upon the sealed records, briefs, and arguments, made these findings:
 

 1. The entire file of this action was sealed by order of the Court on December 14, 2016.
 

 2. In its order and in prior orders sealing the matter, the Court made findings of fact and conclusions of law which became part of the sealed file.
 

 3. The matter was voluntarily dismissed upon settlements with the minor plaintiffs which were approved by the Court.
 

 4. This case involves allegations of sexual abuse committed against minors.
 

 5. The identifying characteristics of the minor plaintiffs are inextricably interwoven throughout the pleadings and ancillary documents, including the Court-approved settlements.
 

 6. Identifying characteristics of innocent third parties are inextricably interwoven throughout the pleadings and ancillary documents, including the Court approved settlements.
 

 7. The Court has carefully considered whether there may be suitable alternatives to sealing this matter, and can find none.
 

 The court ultimately denied Newspaper's motion for access to the file and concluded as a matter of law:
 

 1. findings of fact and conclusions of law contained in its previously entered orders to seal are adopted and incorporated by reference.
 

 2. Unsealing these proceedings presents a substantial and foreseeable risk that the identities of the minor plaintiffs and innocent third parties will become known.
 

 3. Unsealing these proceedings presents a substantial and foreseeable risk that the minor plaintiffs and innocent third parties will be subject to further harm including suffering, embarrassment, emotional distress and psychological trauma.
 

 4. The protection of victims of sexual abuse is a compelling State interest.
 

 5. The protection of juveniles is a compelling State interest.
 

 6. The shielding of victims, particularly juvenile victims, from the trauma and embarrassment
 
 *594
 
 of public scrutiny is a compelling State interest.
 

 7. The protection of innocent third parties from the trauma and embarrassment of public scrutiny is a compelling State interest.
 

 8. The protection of innocent third parties from significant economic damage is a compelling State interest.
 

 9. The encouragement of victims of sexual abuse to seek help from the Court is a compelling State interest.
 

 10. The disclosure of the sealed material would be harmful to each of the above compelling State interests.
 

 11 The disclosure of the sealed material would compound the harm already suffered by the minor plaintiffs.
 

 12. This State's public policy encouraging settlement of civil disputes would be harmed by disclosure of the sealed material.
 

 13. There are no suitable alternatives to sealing the matter.
 

 14. The fragile character and unique rights essential to the recovery of minor victims of sexual abuse substantially outweigh the public's right to access the file in this matter.
 

 15. The public polices found herein, as well as those incorporated by reference, substantially outweigh the public's right to access to the file in this matter.
 

 16. The limitation of the public's right to court proceedings and records is necessary to protect the countervailing public interests in this matter and to prevent injustice.
 

 The trial court explicitly based the August 2017 order upon two compelling State interests: (1) the public interest in protecting the identity of minor victims of sexual abuse, and (2) "[t]he protection of innocent third parties from trauma and embarrassment of public scrutiny" and "significant economic damage."
 
 Only
 
 through incorporating by reference the 2016 orders, the 2017 order also based upon the public interest that the criminal defendant receive a fair trial free from prejudicial pre-trial publicity.
 

 We therefore must consider whether the three stated "compelling State interests" are sufficient to overcome the Newspaper's right under the North Carolina and United States Constitutions to access the court records sealed by the two orders. In addition, we will consider each type of document and information in the file which must be sealed to accomplish protection of the particular state interest.
 
 See
 

 Doe v. Pub. Citizen
 
 ,
 
 749 F.3d at 266
 
 ("When presented with a sealing request, our right-of-access jurisprudence requires that a district court first determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake." (citation and quotation marks omitted) ).
 

 b. Protection of juvenile plaintiffs' identities
 

 The trial court made several conclusions regarding the need for protection of the juvenile plaintiffs, including, "The fragile character and unique rights essential to the recovery of minor victims of sexual abuse substantially outweigh the public's right to access the file in this matter." Certainly, the protection of the
 
 identities
 
 of juvenile victims of sexual abuse is a well-established compelling state interest, and North Carolina law specifically protects the identities of juvenile victims of sexual abuse in many situations. Even
 
 N.C. Gen. Stat. § 1-72
 
 -1 specifically excludes "juvenile proceedings or court records of juvenile proceedings conducted pursuant to Chapters 7A, 7B, 90, or any other Chapter of the General Statutes dealing with juvenile proceedings."
 
 N.C. Gen. Stat. § 1-72.1
 
 (f). Newspaper, defendants, and
 
 amici
 
 all agree that the identities of the juvenile plaintiffs should be protected, but the issue here is whether sealing the
 
 entire file
 
 is necessary to protect the identities of the juveniles.
 

 The General Assembly has given guidance on how to protect juvenile victims of abuse. At the trial court level, the juvenile hearings may be closed under N.C. Gen. Stat. § 7B-801.
 
 [9]
 
 N.C. Gen. Stat. § 7B-302 specifically
 
 *595
 
 addresses the confidentiality of records in juvenile matters. In appeals of juvenile proceedings under Chapter 7B to this Court, the identity of minors is protected by redaction of names, using pseudonyms or initials, and redaction of specific identifying information in any public filings and in the opinions issued by our appellate courts.
 
 [10]
 
 In documents related to criminal proceedings, protecting the identities of minor victims of sexual abuse in documents is normally accomplished by redacting the names and other specific identifying information of the minors and use of pseudonyms. In criminal trials, the trial court may use methods such as having a child victim testify remotely and appearing before the court by closed circuit television monitor to protect the child from trauma from being in the courtroom with the defendant, but before using this procedure, the trial court must determine that the "child witness would suffer serious emotional distress, not by the open forum in general, but by testifying in the defendant's presence." N.C. Gen. Stat. § 15A-1225.1(b)(1) (2017) ;
 
 see also
 

 State v. Jackson
 
 ,
 
 216 N.C. App. 238
 
 , 241,
 
 717 S.E.2d 35
 
 , 38 (2011) ("One policy area that often arises in the constitutional context is the protection of youth by using witness 'shielding' procedures to balance the need for child sex crime victims' testimony against the risk of engendering further emotional distress. The Supreme Court has deemed the interest in safeguarding child abuse victims from further trauma and embarrassment to be a compelling one that, depending on the necessities of the case, may outweigh a defendant's right to face his accusers in court." (citation omitted) ).
 

 But the trial court's sealing orders go far beyond the usual statutory protections granted to juvenile victims of sexual abuse in juvenile or criminal proceedings. The interest in protecting the juvenile victims in those cases is exactly the same as in this case, but our General Assembly has balanced that interest with the need for public access to court records and proceedings and has established the extent of protection to be granted.
 

 Defendants argue on appeal that redaction of the documents and use of pseudonyms will not protect the juveniles "from the psychological harm of having their very personal allegations, whether or not attributed to them, BLASTED into the public domain[,]" because Newspaper "is a news organization" whose "business model is to collect news and disseminate it" for a profit and it is simply seeking "salacious allegations" for this purpose.
 
 [11]
 
 There is no doubt that having facts of their civil cases reported in the media may be upsetting to the juvenile plaintiffs, but we still cannot distinguish their situation from those of the many juvenile victims of sexual abuse in North Carolina who are involved in criminal or juvenile proceedings arising from abuse. Their identities are protected, but the identities of their abusers and facts of the
 
 *596
 
 allegations are not. And we also note it is
 
 defendants
 
 -including the criminal defendant who allegedly sexually abused the juvenile plaintiffs-making this strident plea to protect the juvenile plaintiffs;
 
 plaintiffs
 
 did not appear or file a brief in this appeal.
 

 We hold that sealing of the
 
 entire
 
 file, even including names of attorneys, names of defendants, and sealing orders, cannot be justified by the interest in protecting the juvenile plaintiffs. The trial court should-and did-use pseudonyms for the juvenile plaintiffs, and on remand should redact specific identifying information any documents which include this information. But many documents in the file do not include the juvenile plaintiff's names or any other identifying information, so sealing of those documents cannot be justified by this interest.
 

 c. Protection of criminal defendant's right to a fair trial
 

 The trial court's order denying Newspaper's access also relied upon protection of a criminal defendant's right to a fair trial free of undue pre-trial publicity, at least indirectly, since this interest was only included by incorporating the prior sealing orders. In a general sense, this is also a well-recognized constitutional interest.
 
 See
 

 State v. Jerrett
 
 ,
 
 309 N.C. 239
 
 , 251,
 
 307 S.E.2d 339
 
 , 345 (1983) ("In
 
 Sheppard v. Maxwell
 
 ,
 
 384 U.S. 333
 
 ,
 
 86 S.Ct. 1507
 
 ,
 
 16 L.Ed.2d 600
 
 (1966), the United States Supreme Court held that due process mandates that criminal defendants receive a trial by an impartial jury free from outside influences. The Court also held that where there is a reasonable likelihood that prejudicial pretrial publicity will prevent a fair trial, the trial court should remove the case to another county not so permeated with publicity. In
 
 State v. Boykin
 
 ,
 
 291 N.C. 264
 
 ,
 
 229 S.E.2d 914
 
 (1976), we adopted this test and held that it applied not only to cases involving pretrial publicity by the media, but also to cases where the prejudice alleged is attributable to word-of-mouth publicity." (quotation marks omitted) ). But the cases addressing the right to fair trial arise from orders entered in the actual criminal prosecution, such as the motion for change of venue in
 
 Jerrett
 
 .
 

 Id.
 

 We cannot find any case which has addressed sealing of a
 
 civil
 
 court file in one state based upon a pending criminal prosecution in another state.
 

 Although defendants' brief stresses the need to protect the identities of the juvenile plaintiffs, their brief makes
 
 no
 
 mention of any compelling interest in protecting the criminal defendant's right to a fair trial in South Carolina and cites no case to support this right. And unlike Newspaper, defendants had access to the 2016 sealing orders which noted this interest, but they did not defend it on appeal. The record also indicates that although the South Carolina court had entered a "gag order" in the criminal prosecution, that order was later dissolved.
 
 [12]
 
 The trial court made no findings of fact regarding how this civil case in North Carolina would create "undue pretrial publicity" in the South Carolina criminal matter other than geographic proximity. Normally, the South Carolina court handling the criminal prosecution would be in the best position to address this issue. We also recognize that some of this information is likely already a matter of public record in the South Carolina criminal prosecution or has been publicly disclosed by other persons not parties to this case. If the information has already been disclosed, there is no valid justification for additional protection. And even if on remand defendants can demonstrate a compelling need to continue to seal certain information in this case to protect the criminal defendant's rights in South Carolina, protecting the criminal defendant's right to a fair trial cannot justify completely and permanently sealing an entire case file. Even if some level of protection is needed during investigation or while the case is pending, once the criminal prosecution has concluded, this interest no longer exists.
 
 See
 

 Cooper
 
 ,
 
 200 N.C. App. at 187-88
 
 ,
 
 683 S.E.2d at 424
 
 ("The trial court found that the release of information contained in the search warrants and attendant papers would undermine the ongoing homicide investigation and
 
 *597
 
 the potential success of it. In the sealing order, the trial court found that the sealing
 
 for a limited time period
 
 was necessary to ensure the interests of maintaining the State's right to prosecute a defendant, of protecting a defendant's right to a fair trial, and preserving the integrity of an ongoing or future investigation." (emphasis added) ). The trial court erred to the extent it
 
 permanently
 
 sealed any portion of the file based only upon a need to protect the right of the criminal defendant in a South Carolina criminal proceeding.
 

 On remand, the trial court shall determine the status of the South Carolina criminal prosecution; if it is still pending, and the criminal defendant claims any need for consideration of this interest, the trial court may consider if there is still any need for measures to protect the criminal defendant's right to a fair trial. If the trial court determines that any portion of the file must be sealed or redacted for the protection of the criminal defendant's right to a fair trial, the trial court shall also address in its order when and how those portions of the file will be unsealed. But once the prosecution has concluded, a defendant's interest in a fair trial no longer needs protection.
 

 d. Protection of innocent third parties from embarrassment or economic loss
 

 The trial court's order denying Newspaper's motion is also based upon these conclusions:
 

 7. The protection of innocent third parties from the trauma and embarrassment of public scrutiny is a compelling State interest.
 

 8. The protection of innocent third parties from significant economic damage is a compelling State interest.
 

 We note that the trial court did not base the November or December 2016 orders sealing the file on this "third party" interest, but the order denying Newspaper's motion relies in part on this interest.
 
 [13]
 
 Unlike the well-established interests in protecting the identities of juvenile victims of sexual abuse and in protecting a criminal defendant's right to a fair trial, an interest in protecting third parties from "trauma and embarrassment" or "economic damage" has not been recognized as a compelling state interest outweighing the constitutional right of public access to the records of our courts. We have been unable to find any North Carolina case recognizing a compelling state interest in protection of "innocent third parties" from embarrassment, economic loss, or trauma based solely upon disclosure of embarrassing information such as the allegations in this case.
 
 [14]
 
 The Fourth Circuit Court of Appeals has addressed this type of interest and found no cases which recognized "reputational harm to be a compelling interest sufficient to defeat the public's First Amendment right of access[:]"
 

 A corporation very well may desire that the allegations lodged against it in the course of litigation be kept from public view to protect its corporate image, but the First Amendment right of access does not yield to such an interest. The interests that courts have found sufficiently compelling to justify closure under the First Amendment include a defendant's right to a fair trial before an impartial jury, protecting the privacy rights of trial participants such as victims or witnesses, and risks to national security. Adjudicating claims that carry the potential for embarrassing or injurious revelations about a corporation's image, by contrast, are part of the day-to-day operations of federal courts. But
 
 *598
 
 whether in the context of products liability claims, securities litigation, employment matters, or consumer fraud cases, the public and press enjoy a presumptive right of access to civil proceedings and documents filed therein, notwithstanding the negative publicity those documents may shower upon a company. A corporation may possess a strong interest in preserving the confidentiality of its proprietary and trade-secret information, which in turn may justify partial sealing of court records. We are unaware, however, of any case in which a court has found a company's bare allegation of reputational harm to be a compelling interest sufficient to defeat the public's First Amendment right of access. Conversely, every case we have located has reached the opposite result under the less demanding common-law standard.
 
 See, e.g.,
 

 Procter & Gamble Co. v. Bankers Trust Co.
 
 ,
 
 78 F.3d 219
 
 , 225 (6th Cir.1996) ("commercial self-interest" does not to qualify as a legitimate ground for keeping documents under seal);
 
 Republic of Philippines v. Westinghouse Elec. Corp.
 
 ,
 
 949 F.2d 653
 
 , 663 (3d Cir.1991) (harm to a "company's public image" alone cannot rebut the common-law presumption of access);
 
 Cent. Nat'l Bank of Mattoon v. U.S. Dep't of Treasury
 
 ,
 
 912 F.2d 897
 
 , 900 (7th Cir.1990) (information that "may impair [a corporation's] standing with its customers" insufficient to justify closure);
 
 Littlejohn [v. Bic Corp.]
 
 , 851 F.2d [673] at 685 [ (1988) ] (a corporation's "desire to preserve corporate reputation" is insufficient overcome common-law right of access);
 
 Wilson v. Am. Motors Corp.
 
 ,
 
 759 F.2d 1568
 
 , 1570-71 (11th Cir.1985) (per curiam) ("harm [to] the company's reputation" is insufficient to outweigh common-law right of access).
 

 Doe v. Pub. Citizen
 
 ,
 
 749 F.3d at 269-70
 
 (citations omitted).
 

 "Adjudicating claims that carry the potential for embarrassing or injurious revelations about" parties, witnesses, or "a corporation's image" is "part of the day-to-day operations of" the North Carolina courts as well.
 

 Id.
 

 at 269
 
 . We understand why the corporate defendants, individual defendants, and others who are not parties to the lawsuit would be embarrassed by some of the factual allegations of the plaintiffs' complaint. We also recognize that defendants did not have, and will not have, any opportunity to refute those allegations in the court proceeding itself, since the case has been resolved. But their situation is no different than that of the parties or third parties in the cases noted by the Fourth Circuit Court of Appeals in
 
 Doe v. Public Citizen
 
 .
 

 Id.
 

 at 269-70
 
 . The "public and press enjoy a presumptive right of access to civil proceedings and documents filed therein, notwithstanding the negative publicity those documents may shower upon a company[ ]" or individuals associated with a criminal defendant.
 

 Id.
 

 at 269
 
 . Thus, the trial court erred to the extent it relied upon the interest of protection of the defendants or innocent third parties from embarrassment, trauma, or economic loss in sealing any portion of the court file.
 

 VI. Documents or Information Subject to Sealing
 

 a. Categories of Information in Court File
 

 Since we have determined that the interest in protecting the identities of the juvenile plaintiffs justifies some level of protection of information in the court file, and the right of the criminal defendant to a fair trial
 
 may
 
 justify some temporary level of protection, we must now consider the particular information or documents subject to sealing or redaction. We begin with the presumptive right of access to civil proceedings and documents filed therein. N.C. Const. art. I, § 18. In the North Carolina cases addressing sealing of records, the cases all deal with certain types of records in a court file, such as search warrants,
 
 Cooper
 
 ,
 
 200 N.C. App. 180
 
 ,
 
 683 S.E.2d 418
 
 ; or medical peer review records,
 
 Virmani
 
 ,
 
 350 N.C. 449
 
 ,
 
 515 S.E.2d 675
 
 ; none have addressed sealing an entire file. We will follow the framework set out by the Fourth Circuit Court of Appeals in
 
 Doe v. Public Citizen
 
 . There, the court noted the "categories of documents" entirely sealed by the District Court's order on appeal and addressed each one:
 

 (1) the pleadings and attachments thereto; (2) the motions, related briefing, and exhibits
 
 *599
 
 supporting (i) Company Doe's motion for a preliminary injunction, (ii) the Commission's motion to dismiss, (iii) Company Doe's motion to amend its complaint, and (iv) the parties' cross-motions for summary judgment; and (3) the amended pleadings as well as numerous other residual matters. None of these sealed documents appear on the public docket. Further, in addition to these materials, the district court released its memorandum opinion on the public docket with redactions to virtually all of the facts, the court's analysis, and the evidence supporting its decision.
 

 Doe v. Pub. Citizen
 
 ,
 
 749 F.3d at 266-67
 
 .
 

 Here, the documents in the file include: summonses for each defendant; Civil Action Coversheets; Complaint and Motion for Immediate Injunctive Relief; Amended Complaint and Motion for Immediate Injunctive Relief; Plaintiff's Motion for Expedited Discovery; Notice of hearing for injunctive relief and expedited discovery; Plaintiff's Motion for Entry of Confidentiality and Protective Order; Defendants' Motion to Seal; Applications and Orders for Guardians Ad Litem for each juvenile plaintiff; an affidavit; the Temporary Order to Seal dated 1 December 2016; the Order to Seal dated 14 December 2016; the AOC Civil File Folder marked 16 CVS 8021; and CD recordings of court proceedings from 22 November 2016 and 14 December 2016. We will address the extent of protection needed for each type of document or information separately.
 

 i. Complaints and Motions
 

 The complaint and amended complaint include the most factual allegations, including the identities of the juvenile plaintiffs and information which could make them identifiable. As we have discussed, these documents can be redacted to protect the identities of the juvenile plaintiffs and to remove any specific identifying information.
 

 We note that the trial court determined that "[t]he identifying characteristics of the minor plaintiffs are inextricably interwoven throughout the pleadings and ancillary documents, including the Court-approved settlements[,]" and that "[i]dentifying characteristics of innocent third parties are inextricably interwoven throughout the pleadings and ancillary documents, including the Court approved settlements." We agree that "identifying characteristics" of "innocent third parties" are "interwoven" throughout the pleadings and other documents, but as we have determined, any interest in protection of third parties does not outweigh the presumptive interest of the public in access to court files. And the "identifying characteristics" of the juvenile plaintiffs as described in the documents can be redacted, just as is routinely done in juvenile cases and criminal prosecutions. We agree redaction would be more difficult if the trial court were trying to protect
 
 both
 
 the identities of the minor plaintiffs and to prevent "embarrassment" or "economic damage" to the defendants and multiple third parties, but it is much easier to redact the documents without regard to the defendants or third parties. For example, the affidavit dated 22 November 2016 addresses actions of defendants and third parties but does not compromise the identity of the juvenile plaintiffs, so there is no compelling public interest to justify sealing the affidavit.
 

 Unless on remand the trial court identifies a compelling need for redaction of any other information based upon protecting the criminal defendant's right to a fair trial and makes findings of fact supporting that need, the complaints should not be sealed. On remand, the trial court shall redact from all of the documents in the court file the names of the juvenile plaintiffs and any other specific identifying information such as physical descriptions, ages, addresses, or names of immediate family members. The pseudonyms used for the juvenile plaintiffs in the case caption shall remain. And, as all parties acknowledged during oral argument, there is no reason in this case to seal the names of counsel, the guardians
 
 ad litem
 
 , or the trial court; this information poses no risk of revealing the juvenile plaintiffs' identities or compromising the criminal defendant's right to a fair trial.
 

 The Applications for Appointment of Guardians ad Litem do not include any factual allegations which could justify sealing. The
 
 *600
 
 names of the juvenile plaintiffs should be redacted from each application, but the applications should not be sealed. The Motion for Entry of Confidentiality and Protective Order filed by plaintiffs and the Motion to Seal filed by defendants do not include any information which would compromise the identities of the juvenile plaintiffs or even the criminal defendant's right to a fair trial. They include names of the defendants, but we have determined that the names of the defendants should not be sealed. These Motions should not be sealed.
 

 ii. Court Orders
 

 The file includes orders appointing Guardians
 
 ad Litem
 
 for each juvenile plaintiff, the Trial Court's Temporary Order to seal, and the Order to Seal. We have been unable to find any other North Carolina case in which a court has sealed its own sealing orders, but the Fourth Circuit Court of appeals addressed a District Court's order ruling on a summary judgment motion and held that the "First Amendment right of access extends" to judicial orders:
 

 The public has an interest in learning not only the evidence and records filed in connection with summary judgment proceedings but also the district court's decision ruling on a summary judgment motion and the grounds supporting its decision. Without access to judicial opinions, public oversight of the courts, including the processes and the outcomes they produce, would be impossible.
 
 See
 

 Cox Broad. Corp. v. Cohn
 
 ,
 
 420 U.S. 469
 
 , 492,
 
 95 S.Ct. 1029
 
 ,
 
 43 L.Ed.2d 328
 
 (1975) ("[O]fficial records and documents open to the public are the basic data of governmental operations.");
 
 Mueller v. Raemisch
 
 ,
 
 740 F.3d 1128
 
 , 1135-36 (7th Cir.2014) ("Secrecy makes it difficult for the public (including the bar) to understand the grounds and motivations of a decision, why the case was brought (and fought), and what exactly was at stake in it.");
 
 United States v. Mentzos
 
 ,
 
 462 F.3d 830
 
 , 843 n. 4 (8th Cir.2006) (denying motion to file opinion under seal because "decisions of the court are a matter of public record");
 
 Union Oil Co. of Cal. v. Leavell
 
 ,
 
 220 F.3d 562
 
 , 568 (7th Cir.2000) ("[I]t should go without saying that the judge's opinions and orders belong in the public domain.");
 
 United States v. Amodeo
 
 ,
 
 71 F.3d 1044
 
 , 1048 (2d Cir.1995) (observing that public monitoring of the courts "is not possible without access to ... documents that are used in the performance of Article III functions").
 

 Doe v. Pub. Citizen
 
 ,
 
 749 F.3d at 267
 
 .
 

 Although this Court is not bound by the opinions of the Fourth Circuit or other federal courts, we agree that "it should go without saying that the judge's opinions and orders belong in the public domain."
 
 Union Oil
 
 ,
 
 220 F.3d at 568
 
 . In addition, we have reviewed the Temporary Sealing Order and Sealing Order, and neither includes the juvenile plaintiffs' names or any specific identifying information. The orders include the names of the guardians
 
 ad litem
 
 and defendants in the case caption and the trial judge issuing the orders, but sealing of these names cannot be justified by any compelling public interest. The Orders appointing guardians
 
 ad litem
 
 include the names of juveniles, but those can easily be redacted. The trial court erred in sealing its own orders. On remand, all orders shall be unsealed, and the orders Appointing guardians
 
 ad litem
 
 redacted to protect the identities of the juveniles.
 

 iii. Minor Settlement and Confidentiality Agreement
 

 We will address the Confidential Settlement Agreement separately, since the interests involved as to the Agreement are different and mere redaction of the names and identifying information of the juvenile plaintiffs may not be sufficient. North Carolina courts recognize that settlement of litigation is an important public interest:
 

 Our judicial system has a strong preference for settlement over litigation. Courts are generally indifferent to the nature of the parties' agreement;
 
 why or how
 
 the case is settled is of little concern.
 

 Ehrenhaus v. Baker
 
 ,
 
 216 N.C. App. 59
 
 , 72,
 
 717 S.E.2d 9
 
 , 19 (2011). Confidential settlement agreements are also enforced by our courts, but the public interest in settlement of litigation and freedom of contract must be balanced with the presumptive right of public access to court proceedings.
 

 *601
 
 In
 
 France v. France
 
 ,
 
 209 N.C. App. 406
 
 ,
 
 705 S.E.2d 399
 
 (2011), a husband and wife entered into a Separation and Property Settlement Agreement which included a confidentiality provision and provision that in the event of litigation between them "requires disclosure of any of the terms of the Agreement," the parties would "use their best efforts so that any reference to the terms of the Agreement and the Agreement itself will be filed under seal, with prior notice to the other party."
 

 Id.
 

 at 407-08
 
 ,
 
 705 S.E.2d at 402
 
 (brackets omitted). Litigation regarding an alleged breach of the agreement ensued, and two "media movants," a newspaper and television station, moved for access to the courtroom proceedings in the case.
 

 Id.
 

 at 409
 
 ,
 
 705 S.E.2d at 403
 
 . The trial court entered an order allowing public access to the courtroom proceedings and the husband appealed.
 

 Id.
 

 [15]
 

 This court held that an agreement between the parties which required "automatic and complete closure of the proceedings" was "in violation of public policy-the qualified public right of access to civil court proceedings guaranteed by Article I, Section 18" and in violation of the Public Records Act:
 

 In his argument concerning his right to contract, Plaintiff states that unless a contract is contrary to public policy or prohibited by statute, the freedom to contract requires that it be enforced. We hold that if the Agreement requires automatic and complete closure of the proceedings in this matter, then the Agreement
 
 is
 
 in violation of public policy-the qualified public right of access to civil court proceedings guaranteed by Article I, Section 18. Were we to adopt Plaintiff's position, any civil proceeding could be closed to the public merely because any party involved executed a contract with a confidentiality clause similar to that contained in the Agreement in this matter. Plaintiff's right to contract is in no way violated; we merely hold that Plaintiff cannot, by contract, circumvent established public policy-the qualified public right of access to civil court proceedings. Plaintiff must show some independent countervailing public policy concern sufficient to outweigh the qualified right of access to civil court proceedings.
 

 Plaintiff's position would also render meaningless provisions of the Public Records Act,
 
 N.C. Gen. Stat. § 132-1
 
 (1995). Further, the contract states that Plaintiff and Defendant will use their best efforts so that any reference to the terms of the Agreement and the Agreement itself will be filed under seal. The Agreement contains nothing requiring either Plaintiff or Defendant to use best efforts to obtain a closed proceeding.
 

 Id.
 

 at 415
 
 ,
 
 705 S.E.2d at 407
 
 (citation, quotation marks, and brackets omitted).
 

 This Court affirmed the trial court's order opening the courtroom proceedings, holding:
 

 [T]he trial court was correct to determine whether proceedings should be closed based upon the nature of the evidence to be admitted and the facts of this specific case. Evidence otherwise appropriate for open court may not be sealed merely because an agreement is involved that purports to render the contents of that agreement confidential. Certain kinds of evidence may be such that the public policy factors in favor of confidentiality outweigh the public policy factors supporting free access of the public to public records and proceedings.
 

 By contrast, our appellate courts have ruled for the disclosure of traditionally confidential records pursuant to the Public Records Act.
 
 See, e.g.,
 

 Carter-Hubbard Publ'g Co. v. WRMC Hosp. Operating Corp.
 
 ,
 
 178 N.C.App. 621
 
 , 628,
 
 633 S.E.2d 682
 
 , 687 (2006) (contracts between public hospitals and HMOs may be required to be disclosed excepting parts of contracts that contain "competitive health care information");
 
 see also,
 

 Womack Newspapers, Inc. v. Town of Kitty Hawk
 
 ,
 
 181 N.C.App. 1
 
 , 14,
 
 639 S.E.2d 96
 
 , 104-05 (2007) (files and work product of city attorney may be required to be disclosed pursuant to the Public Records Act). Plaintiff points to no statutory support for any contention that the
 
 *602
 
 Agreement should be excepted from the Public Records Act, and we find none.
 

 Id.
 
 at 415-16,
 
 705 S.E.2d at 407-08
 
 (citations omitted).
 

 The Confidential Settlement Agreement here also includes provisions regarding sealing the court file, but a court file "may not be sealed merely because an agreement is involved that purports to render the contents of that agreement confidential."
 

 Id.
 

 at 415-16
 
 ,
 
 705 S.E.2d at 407
 
 . In many cases, the parties may wish to keep many types of sensitive information secret, but if the parties are using our courts for resolution of their dispute, documents filed with the court are presumptively available to the public.
 

 Calling a settlement confidential does not make it a trade secret, any more than calling an executive's salary confidential would require a judge to close proceedings if a dispute erupted about payment (or termination). Many a litigant would prefer that the subject of the case-how much it agreed to pay for the construction of a pipeline, how many tons of coal its plant uses per day, and so on-be kept from the curious (including its business rivals and customers), but the tradition that litigation is open to the public is of very long standing. People who want secrecy should opt for arbitration. When they call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials. Judicial proceedings are public rather than private property, and the third-party effects that justify the subsidy of the judicial system also justify making records and decisions as open as possible. What happens in the halls of government is presumptively public business. Judges deliberate in private but issue public decisions after public arguments based on public records. The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification.
 

 Union Oil
 
 ,
 
 220 F.3d at 567-68
 
 (citations omitted).
 

 On remand, the trial court should consider whether the Confidential Settlement Agreement within the court file should remain sealed, considering the subject matter of the Agreement and "the facts of this specific case." The "public policy factors in favor of confidentiality" as to the Agreement include the protection of the identity of the juvenile plaintiffs, but may also include the public policy factors of encouraging settlement of litigation and freedom of contract. At least, the trial court should redact specific identifying information as discussed above, but the trial court may determine that other portions of the Agreement or even the entire Confidential Settlement Agreement should remain sealed. Since the parties to the case, the Newspaper, and other parties interested in the Confidential Settlement Agreement have not had the opportunity to address these particular issues before the trial court, on remand, the trial court shall hold a hearing so that all of those parties may be heard before entering an order addressing the extent of access to the Confidentiality Agreement and any redactions needed.
 

 iv. Recordings of 22 November 2016 and 14 December 2016 Hearings
 

 On remand, the trial court shall review the recordings and determine if any portion of the recording reveals the identities of the juvenile plaintiffs or other specific identifying information, just as for the documents discussed above. The trial court shall unseal the recordings, with any redactions necessary to protect the compelling public interests discussed above.
 

 VII. Remedy Under
 
 N.C. Gen. Stat. § 1-72.1
 

 Since we have determined that the trial court's order was not narrowly tailored and that it is possible to unseal substantial portions of the file without harming the interests of the juveniles or the criminal defendant's interest in a fair trial, we must consider the appropriate remedy under
 
 N.C. Gen. Stat. § 1-72.1
 
 . Subsection (e) of
 
 N.C. Gen. Stat. § 1-72.1
 
 addresses procedure when an order is appealed:
 

 A ruling on a motion made pursuant to this section may be the subject of an immediate
 
 *603
 
 interlocutory appeal by the movant or any party to the proceeding. Notice of appeal must be given in writing, filed with the court, and served on all parties no later than 10 days after entry of the court's ruling. If notice of appeal is timely given and given before further proceedings are held in the court that might be affected by appellate review of the matter, the court, on its own motion or on the motion of the movant or any party, shall consider whether to stay any proceedings that could be affected by appellate review of the court's ruling on the motion. If notice of appeal is timely given but is given only after further proceedings in the trial court that could be affected by appellate review of the ruling on a motion made pursuant to this section, or if a request for stay of proceedings is made and is denied, then the sole relief that shall be available on any appeal in the event the appellate court determines that the ruling of the trial court was erroneous shall be reversal of the trial court's ruling on the motion and remand for rehearing or retrial. On appeal the court may determine that a ruling of the trial court sealing a document or restricting access to proceedings or refusing to unseal documents or open proceedings was erroneously entered, but it may not retroactively order the unsealing of documents or the opening of testimony that was sealed or closed by the trial court's order.
 

 N.C. Gen. Stat. § 1-72.1
 
 (e).
 

 N.C. Gen. Stat. § 1-72.1
 
 specifically addresses potential remedies in
 
 interlocutory
 
 appeals and limits the remedy on appeal of an interlocutory order to reversal of the sealing order and "remand for rehearing or retrial" in two situations: 1. Notice of appeal is given "after further proceedings in the trial court that could be affected by appellate review of the ruling on a motion made pursuant to this section"[;] or, 2. Notice of appeal is given and "request for stay of proceedings is made and is denied."
 

 Id.
 

 In both situations, the underlying case is still pending when the order to seal is subject to an interlocutory appeal. The last sentence of subsection (e) is: "On appeal the court may determine that a ruling of the trial court sealing a document or restricting access to proceedings or refusing to unseal documents or open proceedings was erroneously entered,
 
 but it may not retroactively order the unsealing of documents or the opening of testimony that was sealed or closed by the trial court's order
 
 ."
 

 Id.
 

 (emphasis added). If the last sentence of subsection (e) is read to apply to an appeal from a
 
 final order
 
 , and not just interlocutory appeals, it would effectively eliminate any remedy in a case already fully resolved.
 

 Read in context, subsection (e) of the statute addresses only interlocutory appeals so it does not apply to the procedural posture of this case: an appeal from a final order. Here, the underlying proceeding was resolved entirely before the motion to unseal was filed, the order entered, and notice of appeal was given, so the proceeding cannot be "affected by appellate review" of the orders sealing the file, and we cannot remand for "rehearing or retrial" of the case, which has been settled.
 
 N.C. Gen. Stat. § 1-72.1
 
 (e) addresses remedies for interlocutory appeals only, so it does not limit the remedy in this case.
 

 N.C. Gen. Stat. § 1-72.1
 
 is entitled "Procedure to assert right of access" and was enacted after
 
 Virmani-
 
 which was decided when there was no statute addressing a procedure to assert the right of access-to establish a procedure for a non-party to a case to assert the right, without need to "intervene under the provisions of Rule 24 of the Rules of Civil Procedure" or to be a party to the underlying action.
 
 N.C. Gen. Stat. § 1-72.1
 
 (a).
 

 The cardinal principle of statutory construction is that the intent of the legislature is controlling. To ascertain our General Assembly's legislative intent, we look at the phraseology of the statute as well as the nature and purpose of the act and the consequences which would follow its construction one way or the other. We will not adopt an interpretation that would result in injustice when the statute may reasonably be otherwise consistently construed with the intent of the act. Finally, whenever possible, we will construe a statute so as to avoid absurd consequences.
 

 Few v. Hammack Enter., Inc.,
 

 132 N.C. App. 291
 
 , 295-96,
 
 511 S.E.2d 665
 
 , 669 (1999) (citations,
 
 *604
 
 quotation marks, and brackets omitted).
 

 Since the underlying proceeding has been finally resolved and will not be affected by our review of the sealing order, and we have determined that the order was erroneously entered, the only possible remedy is to order the unsealing of the file with redactions and limitations as discussed above. If we interpreted
 
 N.C. Gen. Stat. § 1-72.1
 
 to remove the authority of this court to order unsealing of documents erroneously sealed, this interpretation would leave a successful litigant with no remedy for a violation of its constitutional rights. This interpretation "would result in injustice," and
 
 N.C. Gen. Stat. § 1-72.1
 
 "may reasonably be otherwise consistently construed with the intent of the act."
 

 Id.
 

 at 295-96
 
 ,
 
 511 S.E.2d at 669
 
 . Subsection (f) provides that § 1-72.1 is "
 
 intended
 
 to establish a
 
 civil procedure
 
 for hearing and determining claims of access to documents and to testimony in civil judicial proceedings and
 
 shall not be deemed or constructed to limit, expand, change, or otherwise preempt any provisions of the substantive law that define or declare the rights and restrictions with respect to claims of access
 
 ."
 
 N.C. Gen. Stat. § 1-72.1
 
 (f) (emphasis added). Because
 
 N.C. Gen. Stat. § 1-72
 
 -1 is a procedural statute which does not limit or change any substantive law-including the qualified right of public access to court files under the North Carolina and United States Constitutions-we must construe it in a manner which preserves the duty of the appellate courts to provide a remedy in an appeal from a final order, especially where a constitutional issue is raised.
 

 In addition, the Constitution of North Carolina expressly vests in our Supreme Court the "exclusive authority to make rules of procedure and practice for the Appellate Division." N.C. Const. art. IV, § 13, cl. 2. If we interpreted
 
 N.C. Gen. Stat. § 1-72.1
 
 as a procedural rule eliminating the authority of the Appellate Division to provide a remedy for a violation of constitutional rights by ordering unsealing of documents erroneously sealed, it would conflict with the North Carolina Constitution. Since the only remedy possible in this case is to order unsealing of documents in the case file, with redactions as necessary to protect the identities of the juveniles (and the possibility of additional temporary protection of the criminal defendant's right to a fair trial on remand), our duty under the North Carolina Constitution is to order that the documents be unsealed and redacted.
 

 VIII. Conclusion
 

 We vacate the trial court's 22 November 2016 and 14 December 2016 orders and reverse the Order denying Newspaper's motion for access to the court file and remand for a hearing for the trial court to enter a new order. On remand, the trial court shall immediately unseal the names of all defendants, counsel for all parties, and the guardians
 
 ad litem
 
 for the juvenile plaintiffs to facilitate proper notification to all parties regarding the proceedings on remand and service of any documents filed. All parties shall use pseudonyms for the juvenile plaintiffs and shall not include any specific identifying information of the juvenile plaintiffs in any motions, notices, or other documents filed with the trial court on remand. After proper notice, the trial court shall hold a hearing on remand and all parties to the lawsuit as well as Newspaper shall have the opportunity to present evidence and arguments limited to the proper scope of the redactions or other limitations of public access to the trial court file. At the minimum, the trial court shall redact the names and other specific identifying information regarding the juvenile plaintiffs as noted above in all documents and recordings but may make other redactions consistent with this opinion. The trial court shall consider whether the Confidential Settlement Agreement should remain sealed in its entirety or if it should be unsealed with redactions. At the hearing on remand,
 
 if
 
 the criminal defendant requests any additional protection based upon his right to a fair trial, the trial court shall also consider the status of the South Carolina criminal prosecution, including information already made public in or related to that proceeding, and determine if any additional information in the file must be redacted or sealed to protect the interest
 
 *605
 
 of the criminal defendant in a fair trial.
 
 [16]
 
 If the trial court orders any redaction or sealing based upon the interest of the criminal defendant in a fair trial, it shall make findings of fact supporting the order and shall also address when and how that information shall be unsealed. On remand, the trial court shall not redact or seal any document or recording for the purpose of protecting defendants or third parties from embarrassment, trauma, or economic damage.
 

 REVERSED AND REMANDED.
 

 Judges ZACHARY and MURPHY concur.
 

 [1]
 

 The Temporary Sealing order was signed and filed on 1 December, 2016,
 
 nunc pro tunc
 
 to 22 November 2016.
 

 [2]
 

 We have reviewed the court file
 
 in camera
 
 , and the Newspaper's factual allegations are accurate.
 

 [3]
 

 Plaintiffs John Doe 15, John Doe 16, and John Doe 17, and their respective Guardians
 
 ad Litem
 
 did not appeal the trial court's orders and have not appeared in this appeal.
 

 [4]
 

 Although the federal cases cited in this opinion address the First Amendment right of access, we find these cases to be persuasive authority as applied to the open courts provision of the North Carolina Constitution. N.C. Const. art. I, § 18. In addition, Newspaper's claim was based upon both the state and federal constitutions and they provide essentially the same protection in this context.
 

 [5]
 

 North Carolina also recognizes a common law right of access, in addition to the constitutional rights and the statutory right under N.C. Gen. Stat. § 7A-109, but Newspaper's claims rely primarily upon its state and federal constitutional rights.
 

 [6]
 

 Defendants note in their brief that although Newspaper's motion relied on several theories, Newspaper "proceeded at the hearing ONLY on its constitutional claims."
 

 [7]
 

 Newspaper's motion described the South Carolina gag order: "At the outset of that criminal case, the South Carolina trial court entered an order on September 19, 2016 (file-stamped October 6, 2016) prohibiting various trial participants, including the alleged victims and their family members, from making any extrajudicial statements about the case. That order, which also effectively sealed the contents of the court file, was dissolved by a June 5, 2017 order upon the motion of
 
 The Fayetteville Observer
 
 ."
 

 [8]
 

 The substantive provisions of the 22 November 2016 Temporary Order to Seal and the 14 December 2016 Order to Seal are the same; in fact, they are nearly identical other than the recitation of the procedural posture of the case in the first paragraph of each order. We address the final December 2016 order specifically, but the same analysis would apply to the 22 November 2016 order. We would not address the Temporary Order to Seal at all, since it was superseded by the December order, but we address it because the trial court specifically incorporated it by reference into the Order denying Newspaper's motion for access.
 

 [9]
 

 Before closing a hearing to the public in an abuse, neglect, or dependency proceeding, the trial court must consider "the circumstances of the case, including, but not limited to, the following factors:
 

 (1) The nature of the allegations against the juvenile's parent, guardian, custodian or caretaker;
 

 (2) The age and maturity of the juvenile;
 

 (3) The benefit to the juvenile of confidentiality;
 

 (4) The benefit to the juvenile of an open hearing; and
 

 (5) The extent to which the confidentiality afforded the juvenile's record pursuant to G.S. 132-1.4(l) and G.S. 7B-2901 will be compromised by an open hearing.
 

 (b) No hearing or part of a hearing shall be closed by the court if the juvenile requests that it remain open." N.C. Gen. Stat. § 7B-801 (2017).
 

 [10]
 

 Rule 3.1 of the North Carolina Rules of Appellate Procedure provides that in appeals arising from "termination of parental rights and issues of juvenile dependency or juvenile abuse and/or neglect," "the identity of involved persons under the age of eighteen at the time of the proceedings in the trial division (covered juveniles) shall be referenced only by the use of initials or pseudonyms in briefs, petitions, and all other filings, and shall be similarly redacted from all documents, exhibits, appendixes, or arguments submitted with such filings. If the parties desire to use pseudonyms, they shall stipulate in the record on appeal to the pseudonym to be used for each covered juvenile. Courts of the appellate division are not bound by the stipulation, and case captions will utilize initials. Further, the addresses and social security numbers of all covered juveniles shall be excluded from all filings and documents, exhibits, appendixes, and arguments. In cases subject to this rule, the first document filed in the appellate courts and the record on appeal shall contain the notice required by Rule 9(a)." N.C. R. App. P. 3.1.
 

 [11]
 

 Defendants later note their intent is not "to denigrate [Newspaper] or its business practices[.]"
 

 [12]
 

 Plaintiff's Motion for Entry of Confidentiality and Protective Order was intended primarily to comply with the South Carolina gag order in the criminal prosecution, as they did not want to interfere with the prosecution, but they reserved the right to move to unseal the file after the prosecution concluded.
 

 [13]
 

 We have not examined whether the trial court erred by basing its denial of Newspaper's motion to unseal in part on a ground that was not part of the orders sealing the file initially. Newspaper was unable to address this issue on appeal because the sealing orders were sealed and it could not have discovered this potential issue. We express no opinion on whether the trial court erred in its order denying access by relying upon an interest which was not part of the basis for the sealing orders.
 

 [14]
 

 We recognize that protection of third parties may be a factor in sealing
 
 portions
 
 of court files or proceedings in cases involving confidential information, such as medical information protected by various state and federal statutes. We are addressing only "trauma" or "economic loss" of third parties which may arise from disclosure of "embarrassing" information in a court proceeding which is not protected by any specific statutes.
 

 [15]
 

 The procedural history of
 
 France v. France
 
 is complex; there were two appeals and three orders regarding the media movants' motion, but this portion of the opinion is instructive for purposes of this case.
 

 [16]
 

 It is possible criminal defendant has abandoned this argument since defendants did not mention this interest on appeal. Criminal defendant must request consideration on remand if he wants the trial court to consider this interest.